## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

CURTIS WEDO POOLE,

      Petitioner,

v.                                                    Case No. 4:24-cv-23-MW-MJF

RICKY DIXON,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Curtis Wedo Poole, proceeding *pro se*, has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 10. Respondent ("the State") answered, Doc. 23, and provided relevant portions of the state-court record, Doc. 17. Poole replied. Doc. 25. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Poole is not entitled to habeas relief.

## I.    BACKGROUND FACTS AND PROCEDURAL HISTORY

The following is drawn from the evidence presented at trial, viewed in the light most favorable to the State. *See* Doc. 17-2, Ex. B (Trial Tr.). On August 17, 2018, Deputy David Cripe was on foot patrol in a parking

lot of The Boardwalk at Quietwater Beach in Escambia County, Florida. Cripe was walking down a row of parked cars, when Poole drove past Cripe—going the same direction—down the adjacent, parallel row of parking spaces. Poole was in a red Ford Ranger pickup truck. Poole started backing into a parking space. Cripe was walking toward the empty parking space that abutted Poole's space from behind. As Poole backed in and Cripe approached, Cripe "clearly read" Poole's license plate and observed that the registration validation sticker (the "tag") expired in January 2018. Doc. 17-2, Ex. B at 92. Cripe "believe[d]" that the truck's tailgate was down, but Cripe could not "recall completely." *Id.* at 108.[1]

Poole exited the driver's side of the truck. Cripe put his hand up, signaling Poole to stop. Cripe informed Poole that Poole's tag was expired and that Cripe was detaining him briefly to investigate the traffic violation. Cripe asked Poole for his driver's license, registration, and proof of insurance.

---

[1] Cripe made this statement during cross-examination. The undersigned notes it here, because it forms the basis of at least two of Poole's ineffective-assistance-of-counsel claims.

Poole advised Cripe that he did not have his driver's license, but that his identification card was in the truck bed. Cripe asked Poole to retrieve his ID card. Poole looked briefly for the card but did not locate it, and became hostile toward Cripe. Cripe asked Poole for his name, but Poole refused to provide it and instead argued that he did not have to provide any identification, that he could leave, and that Cripe had no reason to stop him. Cripe repeatedly asked Poole for his identification. Each time, Poole refused and repeated his statements that he could leave and did not have to identify himself. Cripe warned Poole that Poole was obstructing Cripe's traffic investigation by refusing to identify himself and that he would detain Poole for obstructing justice if Poole continued to impede the investigation. Poole stood firm in his position that he did not have to identify himself and was not being detained. Cripe then told Poole to turn around and place his hands behind his back. Poole refused.

At that point Deputy Jose Oliveras, who was working an off-duty shift at the souvenir shop near the parking lot, joined Cripe and Poole. Cripe attempted to get a hold of Poole's left hand from behind, but Poole pulled away, tensed his arms, brought his arms toward the front of his body, and insisted he was not going to be arrested. Oliveras, who was in

front of Poole, attempted to grasp Poole's right hand and move it behind Poole's body toward Cripe. Poole shoved Oliveras back, causing Oliveras to fall into a vehicle and to the ground.

Poole then balled his right fist and drew it back to strike Oliveras. As Poole drew his right arm back, he thrust his left arm backward toward Cripe and elbowed Poole in the chest. Cripe grabbed Poole's right arm before Poole could strike Oliveras. Poole continued to struggle with Cripe and Oliveras, causing Oliveras to fall into another car. Eventually, Oliveras tased Poole, and he and Cripe were able to handcuff him.

During the scuffle, Cripe saw a cigarette box fall out of Poole's right front pants pocket. Once Poole was in handcuffs, Cripe retrieved the cigarette box. Inside the box was a plastic bag that contained marijuana, a small straw with cocaine on it, and a plastic bag that contained crack cocaine.

In Escambia County Circuit Court Case No. 2018-CF-4775, Poole was convicted of six crimes: Resisting Officer Without Violence (Count 1), Battery (Count 2), Battery on a Law Enforcement Officer (Cunt 3), Possession of Cocaine (Count 4), Possession of Cannabis (Count 5), and

Possession of Drug Paraphernalia (Count 6). Doc. 17-1, Ex. A at 62-71.[2] The trial court sentenced Poole to 60 months of imprisonment on Count 3, and 24 months of imprisonment on Count 4 consecutive to Count 3. *Id*. at 65-66. Poole was sentenced to time served on the remaining counts. *Id*. at 67. Without opinion, the Florida First District Court of Appeal ("First DCA") affirmed the judgment on May 11, 2020. *Poole v. State*, No. 1D19-1351, 300 So. 3d 133 (Fla. 1st DCA 2020) (Table) (per curiam) (copy at Doc. 17-6, Ex. F).

On December 10, 2021, Poole filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. Doc. 17-9, Ex. I at 7-45 (Mot.), 48-81 (Am. Mot.). The state circuit court denied the motion. *Id*. at 82-124. The First DCA per curiam affirmed without opinion. *Poole v. State*, No. 1D22-2543, 376 So. 3d 705 (Fla. 1st DCA 2023) (Table) (copy at Doc. 17-12, Ex. L).

Poole filed his original federal habeas petition on January 16, 2024. Doc. 1 at 21, 30. Poole's amended petition raises six claims of ineffective

---

[2] Citations to page numbers of exhibits are to the numbers appearing at the bottom-most center of the page.

assistance of trial counsel. Doc. 10. The parties agree that Poole presented his claims to the state courts in his Rule 3.850 motion and appeal, and that the state courts denied relief on the merits. Doc. 10; Doc. 23. The State asserts that Poole is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard.

## II.   RELEVANT LEGAL STANDARDS

### A.   Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3] Justice O'Connor described the appropriate test:

---

[3] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13 (O'Connor, J., concurring). In applying the "unreasonable application" clause, the federal court defers to the state court's reasoning unless the state court's application of the governing legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court warned that, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is

implicated only to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause of § 2254(d)(1), the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, however, the writ will not issue unless the petitioner shows that he is in

custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

**B.    Ineffective Assistance of Counsel Claims**

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was

deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted).

## III.   DISCUSSION

**Ground One**          **"Trial   Counsel   Rendered   Ineffective Assistance For Failing To File Motion To**

**<u>Dismiss All Charges For Lack Of Probable Cause." Doc. 10 at 9.</u>**

Poole claims that his trial counsel was ineffective for failing to file a pretrial motion to dismiss the charges for "lack of probable cause." Doc. 10 at 9-10. In support, Poole alleges that sometime after counsel took Cripe's deposition, Poole provided counsel with photographs of his truck with the tailgate down from what Poole considered to be, a car-length away. According to Poole, the photographs showed that the tag "can not be observed or seen with the tailgate down." *Id*. at 9-10. Poole faults trial counsel for failing to move to dismiss the charges based on Poole's photographs. *Id*.

### A.    *The State Court's Decision*

Poole presented this claim to the state courts as "Claim One" of his amended Rule 3.850 motion. Doc. 17-9, Ex. I at 57-59. The state circuit court identified *Strickland* as the controlling legal standard, Ex. I at 82-83, and denied relief for these reasons:

> The charges were based on allegations that on August 17, 2018, Defendant was stopped on a Friday night in the parking lot of the Pensacola Beach Boardwalk for operating a vehicle with an expired registration. After failing to produce a driver's license or identification, a struggle ensued between Defendant and the two officers on the scene, drugs and

paraphernalia fell out of Defendant's pocket, and Defendant was arrested.

**CLAIM ONE**

Defendant claims counsel was ineffective for failing to file a pretrial motion to dismiss for lack of probable cause. He alleges Officer David Cripe testified he observed an expired tag on a red Ford truck Defendant was driving. Defendant asserts Cripe could not have observed the tag with the tailgate down while the officer was on foot about a car length away. Defendant alleges the pictures he provided to counsel show the validation sticker could not be seen from the described position Cripe stated or from any distance. Therefore, there was no probable cause to detain Defendant. Defendant further asserts it is likely a motion to dismiss would have been granted, and there was a reasonable probability the result of the trial would have been different.

In support of his claim, Defendant directs the Court to see Exhibits A, B, C, and D. However, he has not attached or submitted any exhibits with his motion. He alleges he provided counsel with four photos in January 2019 of the truck with the tailgate down. No photos of the truck were introduced into evidence at trial. (Exhibit C.)

At trial, Cripe testified he was on foot and saw the red 2004 Ford Ranger pickup truck traveling through the parking lot and back up into a parking space, at which point he could clearly read the license plate and see the plate had an expiration date on the tag of January 2018, which was expired. (Exhibit D, pp. 91-92, 120.) Cripe made contact with Defendant as Defendant exited the driver's side door of the truck, Defendant was detained on the basis of the expired registration, and Cripe advised him the reason for the stop. (Exhibit D, pp. 92-94.) Cripe requested Defendant produce a driver's license; Defendant stated his license had been stolen,

and he had an identification card. (Exhibit D, p. 94.) Defendant became hostile and stated he did not have to produce identification. (Exhibit D, pp. 94096.) Cripe informed Defendant he was obstructing the officer's investigation by failing to identify himself. (Exhibit D, pp. 95-96.)

Cripe testified on cross examination that the incident occurred on a Friday night between 8:30 and 9:30 p.m., and there were a lot of cars in the parking lot but not a lot of people. (Exhibit D, p. 106.) He saw the tag as the truck was parking a row away from him and he was walking toward it, he was about a car length away, and the tailgate may have been down. (Exhibit D, p. 108.) The keys were not located. (Exhibit D, p. 109.) The truck was not registered to Defendant and was unregistered completely. (Exhibit D, p. 110.)

Officer Jose Oliveras testified he was on duty on foot in the area and walked over because he saw Cripe make contact with Defendant. (Exhibit D, pp. 125-126.) He testified he heard Cripe asking Defendant for identification more than once but Defendant did not produce identification, and they attempted to place Defendant in handcuffs. (Exhibit D, p. 126.)

Defendant does not refute that the tag was expired, that the sticker indicated an expiration of January 2018, or that Cripe was investigating the expiration of the tag. Instead, Defendant insists it was impossible to see the sticker on the tag with the tailgate down. It is stated in the arrest report that a computer check revealed the tag had expired on January 8, 2018, and the vehicle was currently unregistered. (Exhibit E.) Moreover, both the truck and Cripe were in motion when Cripe observed the tag. It defies logic that Cripe was unable to see the sticker. Therefore, this claim does not warrant an evidentiary hearing. *See Capalbo v. State*, 73 So. 3d 838, 840 (Fla. 4th DCA 2011) ("A postconviction court is not required to hold hearings on absurd claims or accept as

true allegations that defy logic, and which are inherently incredible.").

Doc. 17-9, Ex. I at 84-86. The First DCA affirmed without explanation. Doc. 17-12, Ex. L.

### B.    *Poole Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Poole's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary). Because the First DCA's order is unexplained, this court employs the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). In other words, this court presumes that the First DCA rejected Poole's claim for the reasons provided by the state circuit court.

The state court's decision is not "contrary to" clearly established federal law, because the state court identified and applied the *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). To obtain habeas relief, therefore, Poole must show that the First DCA's decision involved an unreasonable application of the *Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. Poole fails to make either showing.

Poole theorizes that even though his tag *was* expired—and the expired tag was Cripe's basis for the traffic stop—counsel should have moved to dismiss the charges by using Poole's photographs to dispute Cripe's ability to see the tag and to argue that Cripe's stop was unconstitutional. A fairminded jurist could agree with the state court's conclusion that Poole failed to establish there was a reasonable probability the proposed motion would have succeeded.

The Fourth Amendment requires that an officer have a "reasonable suspicion" of criminal activity in order to initiate a traffic or investigatory stop. *Heien v. North Carolina*, 574 U.S. 54, 59-60 (2014). "Reasonable suspicion" means "'a particularized and objective basis for suspecting the

Page 15 of 44

particular person stopped' of breaking the law." *Heien*, 574 U.S. at 60 (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)). "Even minor traffic violations qualify as criminal activity." *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022). Thus, an officer lawfully may detain a vehicle and its occupants "pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. 323, 332 (2009). Having an expired registration validation sticker violates Florida law requiring the registration of vehicles. *See* Fla. Stat. § 320.02.

Cripe testified that as he was approaching the parking space Poole was backing into, he read the license plate on the rear of Poole's truck and saw a registration tag. Cripe read the tag, saw that it had an expiration date of January 2018, and determined that the tag was expired. Doc. 17-2, Ex. B at 91-92.[4] There was no dispute that the tag was, in fact, expired.

Even assuming to Poole's benefit that the alleged photographs would have been admissible, the photographs—as Poole described them

---

[4] Poole offers no reason to believe that Cripe would have testified any differently at a pretrial motion hearing. Indeed, Poole's claim *is based on* Cripe's trial testimony and arrest report. *See* Doc. 10 at 9.

to the state court—could not have supported a finding that Cripe lacked

a reasonable suspicion to initiate the traffic stop.[5] For starters, Poole did

not provide the state court with the photographs underlying this claim.

Poole offered only this description of the photographs:

> These four pictures of the red Ford Ranger truck are
> over a car length, there about, back, it is clear from these
> pictures that the upper portion of the license plate sticker of
> the tag, which is where the month and year decals are, the
> month on the left and the year on right, the decals cannot be
> observed or seen with the tailgate down, see picture of the
> truck. (See Ex. A, B, D, D).

> The Defendant alleges Officer David Cripe could not
> have observed nor seen the decals sticker was expired with
> tailgate down while he was on foot.

Doc. 17-9, Ex. I at 57. Although Poole *now* has provided this federal

habeas court with photocopies of the photographs, *see* Doc. 25, App., this

Court cannot lawfully consider this evidence because the photographs

were not part of the record that was before the state postconviction court.

_____

[5] The assumption that the photographs would have been admissible is a
stretch. Poole makes no showing that counsel could have satisfied the
prerequisites for admissibility. Poole does not allege who took the
photographs, when, and where, nor does he describe the vantage point
with sufficient detail to show that it was the same vantage point from
which Cripe observed the tag (as opposed to Poole's speculative
interpretation of what Cripe would have seen as he walked toward the
parking space).

*See Shoop v. Twyford*, 596 U.S. 811, 819-20 (2022). A federal habeas court's review under § 2254(d) is confined to the record that was before the state court. *Shoop*, 596 U.S. at 819-20 (citations omitted).

As the state court noted, Poole's still photographs were taken from a static position, whereas Cripe and Poole's truck were in motion—moving toward one another—when Cripe read the rear tag. *See* Doc. 17-2, Ex. B (Cripe's testimony that he got a good view of the tag "as [Poole's truck] was parking, I was walking towards that direction.").

But of greater consequence, Poole has not shown that there was a reasonable probability his photographs would have led a court to find that Cripe's understanding of the particularized facts that he directly observed and were factually correct—that Poole's tag reflected a date that had expired—was unreasonable. *See Heien*, 574 U.S. at 61 ("Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law."). For this reason, Poole's proposed challenge to the constitutionality of Cripe's traffic stop almost certainly would have failed.

A fairminded jurist, therefore, could agree with the state court's conclusion that Poole failed to establish counsel was ineffective for failing

to file Poole's proposed pretrial motion. *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief[.]").

The state court's rejection of Poole's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Poole is not entitled to habeas relief on Ground One.

**Ground Two**          **"Trial Counsel Failure To File A Motion To Suppress The Illegal Stop Turned Into An Illegal Arrest, Violating Defendant's Rights Under the Fourth, Fifth, Sixth And Fourteenth Amendments To The United States Constitution." Doc. 10 at 12.**

Poole claims that trial counsel was ineffective for failing to file a motion to suppress based on Cripe's "illegal stop" (discussed above), and Cripe's "illegal arrest" of Poole. Poole maintains that his arrest was illegal because he did not have an identification card or driver's license on his person; therefore, Poole "could not have resisted or obstructed Officer David's Cripe's investigation." Doc. 10 at 12.

## A.    *The State Court's Decision*

Poole presented this claim to the state courts as "Claim Two" of his

amended Rule 3.850 motion. Doc. 17-9, Ex. I at 60-63. The state circuit

court identified *Strickland* as the controlling legal standard, Doc. 17-9,

Ex. I at 82-83, and denied relief for these reasons:

> Defendant claims counsel was ineffective for failing to file a motion to suppress the illegal stop which turned into an illegal arrest. Defendant alleges he did not obstruct Cripe's investigation, because he did not have an identification card or driver's license on his person. This part of Defendant's claim is without merit. Cripe had detained Defendant in order to investigate a traffic violation. Defendant told Cripe he had identification and then told Cripe he did not have to provide it. Thus, Defendant was obstructing Cripe in the execution of his legal duty of investigating the traffic offense and was lawfully arrested. *See P.V. v. State*, 899 So. 2d 480, 482 (Fla. 3d DCA 2005).
>
> Also in this claim, Defendant asserts the handcuffing of Defendant was not justified, because Cripe testified he was not worried about anything in Defendant's possession being a weapon, and counsel failed to investigate this defense. This part of Defendant's claim is without merit. Cripe was attempting to execute an arrest and was not attempting to handcuff Defendant to merely temporarily detain him for officer safety. *See Reynolds v. State*, 592 So. 2d 1082, 1085 (Fla. 1992).
>
> Defendant also raises the issue of counsel's failure to investigate the photos of the truck and present them as rebuttal to Cripe's testimony that he observed the expired

sticker. There is no reasonable probability of a different outcome as explained as to Claim One above.

Doc. 17-9, Ex. I at 86. The First DCA affirmed without explanation. Doc. 17-12, Ex. L.

### B.   *Poole Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Poole's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99. Because the First DCA's order is unexplained, this court presumes that the First DCA rejected Poole's claim for the reasons provided by the state circuit court. *Wilson*, 584 U.S. at 125.

The state court identified and applied the *Strickland* standard. Thus, Poole cannot obtain habeas relief unless he shows that the First DCA's decision involved an unreasonable application of the *Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. Poole fails to make either showing.

"AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the

burden of overcoming the presumption of correctness by clear and convincing evidence." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing 28 U.S.C. § 2254(e)). "[I]n a habeas case governed by AEDPA, clear and convincing evidence consists of proof that a claim is 'highly probable.'" *Ingram v. Warden, Holman Corr. Facility*, 80 F.4th 1304, 1313 (11th Cir. 2023) (quoting *Fults v. GDCP Warden*, 764 F.3d 1311, 1314 (11th Cir. 2014)).

This court defers to the state court's factual findings because they are amply supported by the state-court record. *See* Doc. 17-1, Ex. A at 11-15 (Arrest Report); Doc. 17-2, Ex. B at 93-98 (Cripe's Trial Test.). Poole has not rebutted any finding with clear and convincing evidence.

As the state court reasonably determined, Cripe testified consistent with his arrest report that after noticing that Poole's tag was expired, Cripe stopped Poole and asked for his registration, proof of insurance, and driver's license. Poole said he didn't have his license but he had an identification card in the truck bed. Cripe told Poole to produce the ID card. Poole searched the truck bed very briefly, but then became hostile, refused to produce the ID card, refused Cripe's multiple requests to provide his name, insisting that he was not going to cooperate and was

free to leave. Cripe warned Poole that Poole was obstructing Cripe's traffic investigation by refusing to identify himself, and that if Poole did not identify himself he would be detained for obstructing justice. When Poole again insisted that he was not being detained, that he was free to leave, and that he was not going to provide any identifying information, Cripe informed Poole that Cripe was detaining Poole for obstructing justice, and ordered Poole to turn around and put his hands behind his back. Doc. 17-2, Ex. B at 91-97.

On this record, the state court reasonably concluded that Poole failed to meet his burden under *Strickland*. "To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

The constitutional validity of an arrest depends on "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964); *see also District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018)). A reviewing court must consider the "totality of the circumstances" the officer faced; that is, "the whole picture." *Wesby*, 583 U.S. at 60.

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243-44, n. 13 (1983). "Probable cause is not a high bar." *Wesby*, 583 U.S. at 57.

The state court reasonably concluded that Poole failed to show that counsel had a meritorious—or even an arguably meritorious—basis to file a motion to suppress. Prior to trial, counsel informed the trial court that Poole had inquired about filing a motion to suppress but counsel did

not believe there was any valid legal basis for one. *See* Doc. 17-9, Ex. I at 124.

As discussed above regarding Ground One, counsel had no basis to challenge the legality of Cripe's traffic stop. Cripe had a reasonable suspicion that Poole was driving with an expired registration tag. *See* Fla. Stat. § 320.02.

Counsel also had no basis to challenge the legality of Cripe requiring Poole to identify himself. Cripe's action was reasonably related to his traffic investigation and was permitted by the Fourth Amendment and Florida law. *See Terry v. Ohio*, 392 U.S. 1, 19-20 (1968); Fla. Stat. § 901.151(2).[6]

---

[6] Section 901.151(2), the Florida Stop and Frisk Law, states in relevant part:

> Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.

Page 25 of 44

Counsel also had no basis to challenge the legality of Cripe's decision to handcuff and arrest Poole. There was probable cause to arrest Poole because a reasonable officer could have concluded that Poole committed the offense of obstructing Cripe in the lawful execution of his duty to investigate the traffic violation. *See Brinegar v. United* States, 338 U.S. 160, 175-76 (1949) (citations omitted); Fla. Stat. § 843.02.[7]

Because Poole's proposed motion to suppress "would have been futile," counsel's decision not to file it was reasonable, and Poole "could not possibly have suffered *Strickland* prejudice." *Green*, 882 F.3d at 987. The state postconviction court did not unreasonably apply, nor reach a decision contrary to, *Strickland*, in rejecting Ground Two.

**Ground Three**          **"Trial Counsel Rendered Ineffective Assistance Of Counsel When Counsel Failed To Fully Investigate The 2000 Red Ford Ranger Truck With The Tailgate Down That Night." Doc. 10 at 15.**

---

Fla. Stat. § 901.151(2).

[7] Section 843.02 states: "Whoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty . . . shall be guilty of a misdemeanor of the first degree." Fla. Stat. § 843.02.

Poole claims that counsel was ineffective for failing to "fully investigate" Cripe's ability to see the expired tag. Doc. 10 at 15.

## A.    *The State Court's Decision*

Poole presented this claim to the state courts as "Claim Three" of his amended Rule 3.850 motion. Doc. 17-9, Ex. I at 64-66. There, he alleged that counsel failed to "investigate the truck and charges that lead to the Defendant's detention and illegal arrest." *Id*. at 65. Poole noted that the property sheet at the Jail reflected his name and did not indicate that he had a driver's license or keys on his person when he was arrested. *Id*.

The state circuit court identified *Strickland* as the controlling legal standard. Doc. 17-9, Ex. I at 82-83. The court denied relief for these reasons:

> Defendant claims counsel was ineffective for failing to investigate the truck with the tailgate down, and counsel should have moved to suppress the illegal traffic stop and all evidence[,] on the ground that the tag could not be seen from a car length away. This part of his claim is without merit, as discussed as to Claim One above.
>
> Defendant further alleges counsel knew Defendant did not own the truck and did not have keys to the truck, as reflected in counsel's questioning of Cripe at trial on page 109 of the trial transcript. Defendant alleges his property report

refutes the officer's allegation that Defendant refused to provide any information. He asserts it was impossible to comply with the officer's order because [he] did not have identification or a driver's license to provide to him.

Cripe testified he observed the truck in transit and parking, and he made contact with Defendant as Defendant was exiting the driver's door of the truck. (Exhibit D, pp. 91-93.) On cross examination, Cripe testified he never located the keys to the truck; Defendant told him his ID was in the exterior bed of the truck, not in the interior cab. (Exhibit D, pp. 109-110.)

Section 320.02, Florida Statutes, requires a person in charge of a motor vehicle driven on the roads of this state to register the vehicle. Defendant does not allege he was not operating the truck. Otherwise, there was evidence he was in charge of the truck as it was being driven. Therefore, he was required to produce proof of registration. Also, Defendant did not tell Cripe he did not have identification. Nor did he provide his name to Cripe. Instead, Cripe overheard Defendant provide his name to EMS personnel called on the scene after Defendant was tased. (Exhibit D, p. 95.) There was no reasonable probability a motion to suppress would have been granted or of a different outcome had trial counsel argued Defendant did not own the truck or have keys to it or have identification or a driver's license.

Doc. 17-9, Ex. I at 87. The First DCA affirmed without explanation. Doc. 17-12, Ex. L.

## B.   *Poole Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Poole's claim and, therefore, is reviewed under § 2254(d)'s

deferential standard. *See Richter*, 562 U.S. at 99. Because the First DCA's order is unexplained, this court presumes that the First DCA rejected Poole's claim for the reasons provided by the state circuit court. *Wilson*, 584 U.S. at 125.

Because the state court identified and applied the *Strickland* standard, Poole cannot obtain habeas relief unless he shows that the First DCA's decision involved an unreasonable application of the *Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. Poole fails to make either showing.

This court defers to the state court's factual findings because they are amply supported by the record. Again, Poole has not rebutted any factual determination with clear and convincing evidence.

The state postconviction court's application of *Strickland* was reasonable, because defense counsel questioned Cripe on cross-examination about all of the points Poole raises: Cripe's ability to see the tag, whether the tailgate was down, whether Cripe found an identification card, and whether Cripe found keys to the truck. Doc. 17-2, Ex. B at 106-19. Counsel's questions reflect that counsel investigated

all of these points. The property sheet from the jail (as described by Poole) was not inconsistent with—and would not have helped counsel impeach—any of Cripe's testimony on these points.

Because Poole failed to show that counsel performed deficiently, or that counsel's investigation and failure to file a motion to suppress prejudiced Poole, the state court's rejection of Poole's claim was a reasonable application of *Strickland*. Poole is not entitled to habeas relief on Ground Three.

**Ground Four**     **"Trial Counsel Rendered Ineffective Assistance Of Counsel By Failing To Investigate The Crime Scene Area For Possible Surveillance Cameras From The Businesses Where Video Footage From Such Cameras Would Have Corroborated Defendant's Counsel Failures In This Respect Violated Defendant's Fourth, Fifth, Sixth And Fourteenth Amendment Rights Under The U.S. Constitution, And Articles 1, 9, 12, And 16 Of The Florida Constitution." Doc. 10 at 18.**

Poole claims that counsel was ineffective for failing to investigate the crime scene for "possible surveillance video cameras from any businesses in the area." Doc. 10 at 18. Poole does not explain how video footage of the incident could have weakened the evidence against him or

otherwise aided his defense. Instead, he asserts generally that had counsel investigated more thoroughly, he "would have discovered the existence of those cameras." *Id*. at 18.

### A.   *The State Court's Decision*

Poole presented this claim to the state courts as "Claim Four" of his amended Rule 3.850 motion. Doc. 17-9, Ex. I at 67-70. There, he provided no additional explanation of how video footage of his arrest would have helped his defense.

The state circuit court identified *Strickland* as the controlling legal standard. Doc. 17-9, Ex. I at 82-83. The court denied relief for these reasons:

> Defendant claims counsel was ineffective for failing to investigate the crime scene for possible surveillance cameras from surrounding businesses to corroborate Defendant's theory of defense. He alleges counsel questioned Cripe concerning surveillance cameras in the area, as shown on page 112 of the trial transcript. Defendant asserts had counsel not relied on the officer's theory and had conducted his own investigation, he would have discovered the existence of those cameras, which would have corroborated Defendant's sole theory of defense.

> On cross examination, counsel asked Cripe if he had requested any video from any of the businesses in the area, which he had not. (Exhibit D, pp. 112-113.) In closing, counsel argued there was no video from any of the establishments

along the boardwalk, and Cripe made no attempt to get any, which was a lack of evidence. (Exhibit D, p. 173.)

Defendant is speculating that any of the surrounding businesses had video cameras and were recording that area of the parking lot where the incident occurred. Because his defense hinges on his allegations that Cripe could not have seen the sticker on the tag from where he was standing, as alleged in other grounds, Defendant is further speculating that any such video would also show the view of the tag from Cripe's perspective. Therefore, this claim is insufficient to warrant an evidentiary hearing.

Doc. 17-9, Ex. I at 88. The First DCA affirmed without explanation. Doc. 17-12, Ex. L.

## B.    *Poole Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Poole's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99. Because the First DCA's order is unexplained, this court presumes that the First DCA rejected Poole's claim for the reasons provided by the state circuit court. *Wilson*, 584 U.S. at 125.

Again, the state court identified and applied the *Strickland* standard. Thus, Poole cannot obtain habeas relief unless he shows that the First DCA's decision involved an unreasonable application of the

*Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. Poole fails to make either showing.

Poole's sole argument is that surveillance cameras from nearby businesses might have captured his arrest. This speculative and conclusory argument falls far short of establishing deficient performance and prejudice under *Strickland*. *See Richter*, 562 U.S. at 105; *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985).

The First DCA's rejection of Poole's claim—a claim based on pure speculation—was a reasonable application of the *Strickland* standard and was based on a reasonable determination of the facts in light of the record before the state court. Poole, therefore, is not entitled to habeas relief on Ground Four.

**Ground Five**   **"Trial Counsel Was Ineffective Assistance For Failure To Subpoena The Phone Company For Defendant Phone Records To Identify The Phone Numbers Of The Two Witnesses That Would Have Testified To The Facts That The Red Ford Ranger Truck Was In Fact Parked Hours Before The Officers Arrived At The Scene. Trial Counsel Failures Violated Defendant's Fourth, Fifth, Sixth And Fourteenth Amendment Rights Under**

### The U.S. Constitution, And Articles 1 Section 9 Of The Florida Constitution." Doc. 10 at 21.

In this claim, Poole faults trial counsel for failing to obtain Poole's phone records to identify two potential witnesses. According to Poole, these witnesses "would have testified to the fact that the truck was parked in the parking lot at the time hours before the officer arrived at scene." Doc. 10 at 22. Poole explains:

> [T]he two witnesses . . . were there inside the bar that night, whom came out side of the bar to the parked truck in the parking lot, at the time Defendant call the two witnesses phone[.] [T]he two witnesses would have testified to the fact that the truck was parked in the parking space in the lot. . . . The phone records would have proved Defendant's claim as to the time line from Defendant's phone records call made to the two witnesses phones whom were inside the bar that day and night. They would have testified to the fact that the truck was parked in the parking lot at the time hours before the officer arrived at scene.

*Id*. at 22. Oddly, Poole does not explain why he did not look up the phone numbers himself, on his telephone, during the two weeks he was at liberty. *See* Doc. 17-1, Ex. A at 4-5 (indicating Poole's release on bond on 09/21/2018 and revocation of bond on 10/05/2018). Poole also does not explain why he did provide the witnesses' names and telephone numbers to defense counsel.

## A.    *The State Court's Decision*

Poole presented this claim to the state courts as "Claim Five" of his amended Rule 3.850 motion. Doc. 17-9, Ex. I at 71-73. The state circuit court identified *Strickland* as the controlling legal standard. Doc. 17-9, Ex. I at 82-83. The court denied relief for these reasons:

> Defendant claims counsel was ineffective for failing to subpoena Defendant's phone records to identify the phone numbers of two witnesses that would have testified the truck was parked hours before the officers arrived at the scene. He alleges the phone records would have proven his claim as to the timeline from his calls to the witnesses.
>
> This claim is insufficiently pled. Defendant fails to allege the names of the witnesses that would appear on his phone calls and that they were specifically available to testify at trial. *See Nelson v. State*, 875 So. 2d 579, 583 (Fla. 2004); *Sage v. State*, 905 So. 2d 1039, 1042 (Fla. 2d DCA 2005). Moreover, testimony that Defendant was parked for hours would not refute evidence that Cripe encountered Defendant exiting the truck and that he observed the expired tag.
>
> Additionally, at the *Nelson* hearing of January 14, 2019, Defendant told the trial court he was at the scene 15 to 20 minutes before the police arrived. (Exhibit F, p. 4.) The inconsistency between Defendant's statement to the trial court as to when he arrived in the parking lot and his allegations in his motion contributes to the insufficiency of his motion.
>
> Finally, Defendant fails to sufficiently allege how phone records would prove his claim. The Court notes Defendant attempted to explain to the trial court at the *Nelson* hearing

that phone records would prove he was in the parking lot because of the time frame. (Exhibit F, p. 4.) Trial counsel advised the trial court that Defendant had told him there were no other witnesses and that this was the first time he had heard of phone evidence. (Exhibit F, pp. 4-5.) The trial court found there was no reasonable cause to find ineffective assistance of counsel. (Exhibit F, p. 5.)

Doc. 17-9, Ex. I at 88-89. The First DCA affirmed without explanation.

Doc. 17-12, Ex. L.

### B.    *Poole Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Poole's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99. This court presumes that the First DCA rejected Poole's claim for the reasons provided by the state circuit court. *Wilson*, 584 U.S. at 125; *see also Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1285-86 (11th Cir. 2012) (state court's denial of claim as insufficiently pled is a rejection of the claim on the merits).

The state court identified and applied the *Strickland* standard. Thus, Poole cannot obtain habeas relief unless he shows that the First DCA's decision involved an unreasonable application of the *Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.

On this record, a fairminded jurist could agree with the state court's conclusion that Poole's allegations failed to satisfy the *Strickland* standard. Poole's allegations made no showing, much less a sufficient one, that there was a reasonable probability the result of his trial would have been different had counsel subpoenaed Poole's phone records.

A petitioner's burden under *Strickland* "is particularly heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)). Thus, the Eleventh Circuit has held that "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *McKiver*, 991 F.3d at 1365.

Poole's confusing and unsupported allegations of potential witnesses—whom he obviously knew but declined to name or contact when he was out on bail—was insufficient to establish a *Strickland* violation. Poole's speculation and conclusory argument are precisely the type of uncalled-witness claims that courts uniformly reject. *See McKiver*,

Page 37 of 44

991 F.3d at 1365-67; *see also Johnson*, 256 F.3d at 1187; *Wilson*, 769 F. App'x at 827; *Aldrich*, 777 F.2d at 636.

The state court's rejection of Poole's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Poole, therefore, is not entitled to habeas relief on Ground Five.

**Ground Six** **"Trial Counsel Was Ineffective For Failing To Impeach The State Two Witnesses Falsely Making Inconsistent Statements During Trial And In Theirs Record Deposition Transcripts As Well In The Narrate Report And At Trial." Doc. 10 at 24.**

Poole alleges that the arrest report indicated that Deputy Oliveras took 11 photographs at the crime scene. Poole claims that his trial counsel was ineffective for failing to obtain the photographs. Poole does not explain how the photographs would have aided his defense or changed the result of his trial. Doc. 10 at 24-25. Poole also asserts that trial counsel was ineffective because he failed to impeach Deputy Cripe's trial testimony—that he "made contact with Mr. Poole, he was exiting the driver's door of the vehicle"—with "inconsistent prior statements" from Cripe's deposition. *Id*. at 25. Poole does not describe Cripe's statement at his deposition or attach an excerpt of the transcript.

## A.   *The State Court's Decision*

Poole presented this claim to the state courts as "Claim Six" of his amended Rule 3.850 motion. Doc. 17-9, Ex. I at 74-77. The state circuit court identified *Strickland* as the controlling legal standard, Doc. 17-9, Ex. I at 82-83, and denied relief for these reasons:

> Defendant claims counsel was ineffective for failing to impeach the trial testimony of Cripe and Olivera[s] with prior inconsistent statements from their deposition testimony. This claim is insufficiently pled in that Defendant does not adequately identify what prior statements would have been inconsistent with specific trial testimony. Also, Defendant asserts the prior inconsistent statements would have been admissible since they were cumulative to other facts that trial counsel elicited on cross examination. *See Pierce v. State*, 137 So. 3d 578, 582 (Fla. 2d DCA 2014) (finding prior inconsistent statements were admissible where they were not cumulative of testimony elicited on cross examination).
>
> Defendant also asserts counsel should have impeached Cripe with photos Defendant provided to counsel, which would show the validation sticker could not be observed from any distance. This part of his claim is without merit, as addressed as to Claim One above.
>
> Defendant alleges there were 11 photographs taken at the scene by Oliveras. He asserts counsel was ineffective for failing to investigate the issue. This part of his claim is insufficiently pled.

Doc. 17-9, Ex. I at 89-90. The First DCA affirmed without explanation. Doc. 17-12, Ex. L.

**B.**   ***Poole Is Not Entitled to Habeas Relief***

The First DCA's summary affirmance is an "adjudication on the merits" of Poole's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99. Because the First DCA's order is unexplained, this court presumes that the First DCA rejected Poole's claim for the reasons provided by the state circuit court. *Wilson*, 584 U.S. at 125.

The state court identified and applied the *Strickland* standard. Thus, Poole cannot obtain habeas relief unless he shows that the First DCA's decision involved an unreasonable application of the *Strickland* standard, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. Poole fails to make either showing.

Poole wholly failed to describe or quote any statement made by Cripe or Oliveras in his deposition that was inconsistent with his trial testimony. Poole cites the trial transcript where Cripe testified: "When I made contact with Mr. Poole, he was exiting the driver's door of the vehicle." Doc. 10 at 25 (citing Trial Tr. at 93, lines 8-12). Poole does not detail Cripe's deposition testimony on that point. At a pretrial *Nelson*

hearing to address Poole's complaints about trial counsel, Poole's counsel described Cripe's deposition testimony: "[T]he evidence from the depositions will show that an officer saw Mr. Poole park his vehicle. As Mr. Poole was getting out of the vehicle, the officer made contact with him." Doc. 17-9, Ex. I at 124. That reflects *consistent* statements.

As to Oliveras, the trial transcript establishes that defense counsel did, in fact, attempt to impeach Oliveras with Oliveras's statements in his police report. Doc. 17-2, Ex. B at 131-34. On this record, the state court reasonably determined that Poole failed to establish deficient performance with regard to the use of Cripe's and Oliveras's deposition testimony during cross-examination.

Poole also failed to show a reasonable probability of a different trial outcome had counsel questioned Cripe or Oliveras about any particular statement from either deputy's deposition. A fairminded jurist, therefore, could agree with the state court's conclusion that Poole failed to satisfy the prejudice prong of the *Strickland* standard.

As to the crime-scene photographs, Poole fails to describe any photograph, much less explain how it would have weakened the evidence of his guilt or supported a viable defense. Thus, the state court reasonably

concluded that Poole's vague and conclusory allegations fell far short, on their face, of establishing *Strickland*'s performance and prejudice prongs. *Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F. 4th 1193, 1221-22 (11th Cir. 2022); *Boyd*, 697 F.3d at 1332-33.

The state court's rejection of Poole's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Poole, therefore, is not entitled to habeas relief on Ground Six.

## IV.  A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section]  2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. §

2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation, the relevant party shall file such an objection with the District Court.

## V.   CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     The amended petition for writ of habeas corpus, Doc. 10, challenging Petitioner's judgment of conviction in *State of Florida v.*

*Curtis Wedo Poole*, Escambia County Circuit Court Case No. 2018-CF-4775, be **DENIED**.

2.    The District Court **DENY** a certificate of appealability.

3.    The clerk of court close this case file.

At Panama City, Florida, this 5th day of September, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only. A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**